

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

June 15, 1965

Col. Laurence T. Ayres
Executive Assistant
Emergency Resources Planning Committee
Austin, Texas

Opinion No. C-455

Re: Does the Governor, in time
of national emergency, have
the authority to direct the
implementation of the sub-
mitted Emergency Resources
Management Plan. If not,
what legislation will be
necessary to give him the
authority, and allied
questions.

Dear Sir:

We are in receipt of your letter requesting an opinion
on the questions as hereinafter set out. The first portion of
your letter reads as follows:

"Enclosed herewith is a preliminary draft of
a portion of the Emergency Resources Management Plan
for the State of Texas as developed by a committee
appointed by the Governor. This plan, in its
entirety and upon completion, will be the resulting
product of a contract between the Federal Government,
represented by the Office of Emergency Planning,
and the State of Texas, Colonel Homer Garrison, Jr.,
by directive, representing the Governor.

"This draft is submitted to your office for
study and opinion relative to certain assumptions
and authorities. Specifically, the following are
a few of the questions raised by the committee:

"1. Does the Governor, in time of national
emergency, have the authority to direct the
implementation of this plan? If not, what legis-
lation will be necessary to give him the authority?

-2162-

"2. Does the Governor have authority to direct certain State agencies to assume responsibilities under the provisions of this plan - planning responsibilities during peace, operating responsibilities during emergency.

"3. What additional authorities (Annex A) are applicable?

"4. Does the Governor have or does he have to have authority to create a State Executive Reserve (Annex E)?"

The introduction to this preliminary draft sets out the overall State policies which are to be followed in the event of nuclear attack and is a plan that includes organizational and staffing arrangements for central coordination and policy direction to State governmental organizations, with emergency assignments in particular resource fields.

It is noticed in your introduction the following:

"Although it is conceivable, it is improbable that the Emergency Resource Management Plan will be implemented without the State first being under the operational provisions of the State of Texas Civil Defense Operational Survival Plan, under which, upon warning of attack, citizens of the State occupy shelters. Following emergence from shelter, local governments take actions directed in the State of Texas Civil Defense Operational Survival Plan and local civil defense plans and additionally insure conservation of available local resources. . . ."

The above portion of the introduction is set out for information purposes.

From our reading and study of the plans which have been submitted, together with your questions, it is ascertained that the overall purpose of such plans, is the handling of our resources in time of emergency and to have some governmental agency, individual or group of individuals that will be responsible in carrying out this plan.

To answer your questions as set out in your letter, we must look to the statute governing civil defense, which is Article 6889-4, Vernon's Civil Statutes.

The caption of House Bill 784, Acts 1951, 52nd Leg., p. 529, Ch. 311, which is codified by Vernon as Article 6889-4, states in part:

"An Act relating to the development of a civil defense and disaster relief plan for this State and its political subdivisions; granting necessary powers to State and local governments of this State to cope with emergencies threatening life and property within the State; . . ." (Emphasis added)

Section 2 states:

"The Governor shall provide for the organization and coordination of a program of civil defense and disaster relief adequate to protect life and property in this State in case of natural disaster, enemy action, or the threat thereof.

"He may establish by executive proclamation a State Defense and Disaster Relief Council, consisting of the representatives of such State agencies, departments, and institutions of the State whose legal functions relate to important phases of this activity and representatives of public or quasi-public relief organizations, and who may be designated by the Governor."

Section 3 states:

"The Governor, or upon his designation, the State Defense and Disaster Relief Council, may issue, within the limits of constitutional power, such directives and executive orders as may be necessary to effectuate the purpose of this Act, which directives shall be filed in the office of the Secretary of State and shall receive widespread publicity and notice unless such notice will be of aid and comfort to the enemy."

Section 4 states in part:

"The Governor, or upon his designation, the State Defense and Disaster Relief Council, is further authorized and empowered:

" . . .

"(b) To provide for the organization and

operation of Mobile Support Units for use by him in dispatching outside aid to stricken areas;

"(c) To coordinate the negotiation of civil defense mutual aid agreements between political subdivisions of the State and to direct, if necessary, the coordination of civil defense activity under such agreements;

"(d) Through appropriate State agencies and State Disaster District Control Centers to direct evacuation plans and operations;

"(e) To prescribe uniform signals, warnings, alerts, credentials, insignia, and civil defense operational plans throughout the State and to provide for dim outs or other precautionary measures deemed necessary to prevent or minimize loss of life or injury to persons or property from enemy action or other catastrophe or the threat thereof;

". . ."   (Emphasis added)

Section 8 states:

"In carrying out the provisions of this Act, the Governor and the executive officers or governing bodies of the political subdivisions of the State are authorized to utilize the services, equipment, supplies and facilities of existing departments, offices, and agencies of the State and of the political subdivisions thereof to the maximum extent practicable, and the officers and personnel of all such departments, offices, and agencies are directed to cooperate with and extend such services and facilities to the Governor and to the civil defense organization of the State upon request."

Section 10 states:

"It shall be the duty of every organization for civil defense established pursuant to this Act and of the officers thereof to execute and enforce such orders, rules and regulations as may be made by the Governor and/or the State Defense and Disaster Relief Council, under authority of this Act."

Col. Laurence T. Ayres, page 5 (C- 455)


There have been no cases construing the above mentioned statute and therefore, this opinion is based upon our construction of the statute, together with the plans as submitted.

In answering your first question, under Article 6889-4, we are of the opinion that the Governor, in time of national emergency, has the authority to direct the implementation of the plan submitted.

In answering your second question, we are of the opinion that under the above quoted provisions of Article 6889-4, the Governor has the authority to direct certain State agencies to assume responsibility under this plan, both during peace and emergency.

To question No. 3 we can find no applicable additional State authorities governing the plan as submitted.

Under Section 2 of Article 6889-4, which states:

"The Governor shall provide for the organization and coordination of a program of civil defense and disaster relief adequate to protect life and property in this State in case of natural disaster, enemy action, or the threat thereof.

". . ."

the Governor has authority to create a State Executive Reserve under the plan submitted. However, there is no authority which we can find that will allow payment to the individuals so selected for such training in the executive reserve, and the persons so selected, would have to serve without compensation.

## SUMMARY

1. In time of national emergency, the Governor has the authority to direct implementation of the Emergency Resources Management Plan, under Article 6889-4, Vernon's Civil Statutes.

2. Under Article 6889-4, the Governor has the authority to direct certain State agencies to assume responsibilities under provisions of this plan, both in peace and during emergencies.

3. We can find no additional State authorities governing the plan as submitted, except those set out in Annex A.

-2166-

Col. Laurence T. Ayres, page 6 (C-455)

     4.  The Governor has the authority to create a State Executive Reserve, under Article 6889-4, and the plan as submitted, provided such reserves serve without compensation.

          Yours very truly,

          WAGGONER CARR
          Attorney General

By           John H. Banks
          Assistant

JHB:sj

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Pat Bailey
John Reeves
J. C. Davis
H. Grady Chandler

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright